|(*Circuit Court of Cook County.*)

### Abel C. Bingham

### vs.

### Ann Jackson.

(July 16, 1872.)

1. PARENT AND CHILD—DUTY OF PARENT TO SUPPORT INFANT CHILD. A parent is under obligation to provide for the support of an infant child. It is a principle of natural law resting upon the foundation of parental affection and moral duty, and of the common law based upon the right of the parent to the services of the minor.

2. SAME—LIABILITY OF PARENT FOR NECESSARIES FURNISHED CHILD.
A parent can only be held liable to third persons for necessaries
furnished a minor child where a contract, either express or
implied, can be shown. Very slight circumstances will, how-
ever, establish such a contract.

3. SAME—LIABILITY FOR CONTRACTS OF INFANT. Where an infant
can make no contracts and must be supplied or suffer, the reason
for requiring a contract ceases and the parent is liable for all
supplies to an infant which were so absolutely needed that the
infant must have them or perish.

4. SAME—LIABILITY OF MOTHER. The same liability rests upon the
mother after the death of the father.

Action for value of services rendered by plaintiff to de-
fendant's minor son. Heard before Judge John G. Rogers
The facts are stated in the opinion.

*J. C. & J. J. Knickerbocker,* for plaintiff.

*Runyan, Avery, Loomis & Comstock,* for defendant.

ROGERS, J.:—

B. F. Jackson, a minor and son of the defendant, Mrs. Ann
Jackson, was run over by a train of cars and so injured that
both of his legs had to be amputated. At the time of the
accident he lived with his mother, but was engaged in work
for a railroad company. When injured he was taken into
a hotel and the plaintiff, Dr. Bingham, was called in as a
physician and surgeon. It was necessary to amputate his
limbs to save his life. The doctor had to attend him for sev-
eral weeks afterwards. The boy sued the railroad company,
recovered a large judgment, which was set aside and reversed
by the supreme court, and before another trial was had, the
suit was compromised, and he received $3,000 in full of all
claim for damages. He did not pay the plaintiff for his
services, and this suit was then brought against his mother
to recover for the services of the plaintiff. Upon the trial
by the court, without a jury, the facts aforesaid appeared,
and it was also found that the boy's father had been dead
for some years before the accident; that his mother, the de-
fendant, had an estate worth at least $6,000, and that the
greater part of the money received by her son from the rail-

road company had been used in paying off debts due by his mother on her homestead in this city.

It was not shown that the doctor was called to see and attend B. F. Jackson by his mother, but it did appear that she knew of his services after he was first called in. Nor did it appear clearly whether the money received by the son for his services to the railroad company was paid to him or to his mother. There was no controversy on the trial as to the services rendered by the plaintiff, nor of the value thereof. The only question made was as to the liability of the mother. The general principle that a parent is under an obligation to provide for the support and maintenance of his infant child is too well established to admit of doubt. It is a principle of natural law, resting upon the foundation of parental affection and moral duty. It, too, is a principle of the common law, based upon the right of the parent to the services of his minor child, so that there is both moral and legal obligation upon the father to supply his child while yet a minor with the ordinary necessaries of life.

In England at an early day it was provided by statute that "the father and mother, grandfather and grandmother of poor impotent persons shall maintain them at their own charges, if of sufficient ability, according as the quarter session shall direct." Sharswood's Blackstone, book 1, vol. 1, page 447.

This statute, it will be observed, did not confine the obligation to support only such children and grand-children as were minors; it included all, old or young, who were poor and impotent, and who were from the loins of parents. Without this statute the obligation to maintain minors, in England, was recognized as a legal one, but the courts held that the parent could only be held liable to third persons for necessaries furnished a minor child where a contract could be shown, either express or implied, from particular facts. But very slight circumstances sufficed to justify them in finding a contract on the part of the parent. And "it will be noticed that where it is most distinctly denied that this moral obligation of the parent constitutes a legal obligation,

the denial is confined to a liability for the contracts of the child." See Parsons on Contracts, fifth edition, vol. 1, page 303.

But "where the infant can make no contracts, and must be supplied or suffer," then the reason for requiring a contract, which arises from the danger of permitting a father to be bound, ceases. See Parsons, *supra.*

The rule of law in this country generally, if not universally, "imposes a liability on the father for all supplies to an infant which were so absolutely needed that he must have them or perish." Parsons, page 306. The case we are considering falls under this rule, for without the services of a physician and surgeon young Jackson would have suffered greatly, and, no doubt, died.

That his father, if living, would have been liable for the services rendered his son, I have no doubt; but whether the mother is under equal obligation, the father being dead, is the question here. It is said by Parsons that the legal obligation upon the mother is very greatly qualified in important particulars, one of which is, where the son has property in his own right. To the same effect is *Whipple v. Dow,* 2 Mass. 415. But the obligation, if any, in the case we are considering, arose where the son had no property, and it is in that respect different from the cases cited and relied upon by defendant's attorneys. Besides, I can see no difference whatever in the moral or legal obligation resting upon father and mother. The mother has as strong, if not stronger, natural affection for her offspring. She is entitled to the services of her minor child; the father being dead, is then the head of the family, and should assume all the parental burdens. See Schouler's Domestic Relations, page 325. See, also, as to her right to the son's services, *Dufield v. Cross,* 12 Ill. 397.

In view of the facts of this case, that B. F. Jackson, a minor child of the defendant, his father being dead, had no property at the time of the accident and the rendering of the services sued for, was living with his mother, who was entitled to his services, and would have suffered and died but for the services and attention of the plaintiff, and that she

had and now has a good estate, freed from incumbrance by money furnished her by that son, which he afterwards acquired, I have no doubt of her moral and legal obligation to pay for the services sued for.

Let judgment be entered for the plaintiff against defendant for $273.25.